# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:04CV633-H

| | |
|---|---|
| **WALTER J. SCHADE,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM AND ORDER** |
| ) | |
| **MBNA AMERICA BANK, N.A.,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on the following motions and memoranda:

1. The "Defendant's Motion for Partial Summary Judgment" (document #21) and "Memorandum ... in Support ..." (document #22), both filed November 17, 2005;

2. "Plaintiff's Motion for Summary Judgment" (document #23) and "Brief in Support ..." (document #24), both filed November 17, 2005;

3. "Defendant's Memorandum ... in Opposition to Plaintiff's Motion for Summary Judgment" (document #27) filed December 19, 2005;

4. "Plaintiff's Brief in Opposition to [Defendant's] Motion for Summary Judgment" (document #28) filed December 18, 2005;

5. "Plaintiff's Reply Brief in Support of his Motion for Summary Judgment" (document #33) filed January 9, 2006; and

6. Defendant's "Reply ... in Support of Defendant's Motion for Partial Summary Judgment" (document #34) filed January 9, 2006.

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and

these motions are now ripe for determination.

Having carefully considered the parties' arguments, the record, and the applicable authority, the undersigned will <u>deny</u> the "Plaintiff's Motion for Summary Judgment" (document #23), and <u>grant</u> the "Defendant's Motion for Partial Summary Judgment" (document #21), as discussed below.

## I. FACTUAL AND PROCEDURAL HISTORY

This is an action to recover damages and equitable relief for alleged violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 <u>et. seq.</u> ("FCRA"), and state common and statutory law, relating to credit reporting of an unpaid balance on a credit card account issued by Defendant MBNA America Bank, N.A. in the name of Plaintiff Walter J. Schade ("the Account").

It is undisputed that the Account was opened on July 3, 1995, although the parties dispute the manner in which the Account was opened. MBNA did not retain a copy of the Account application, but its records indicate that the Plaintiff is the primary cardholder on the Account, and that Susan N. Schade (then his wife and now his ex-wife) was an authorized user on the Account.

In his deposition, the Plaintiff testified that he did not open the Account, but that he "c[ould] not recall" whether he had ever used the credit card issued on the Account. In her "Declaration," Ms. Schade states that she opened the Account without Mr. Schade's knowledge and that she intended to be the responsible party on that Account, although she does not deny that she provided Mr. Schade's name and other identifying information to MBNA.

According to MBNA's records, periodic statements were mailed in the Plaintiff's name to addresses listed in its records as the Plaintiff's residence, MBNA received payments in response to

those statements, and also received numerous requests for changes of address.

Rather than deny that he made any of these payments, in his deposition the Plaintiff again stated only that he "c[ould] not recall" having made them. Additionally, one of those payments, in the amount of $300 and received by MBNA on April 5, 2001, was made by a check signed "Walt J. Schade."

In his responses to the Defendant's Requests for Admissions, the Plaintiff admits that he received mail at certain addresses (one in Laguna Nigel, California, and four in North Carolina), which according to MBNA's records, were the addresses to which statements were sent at different periods during 2000 through 2002.

MBNA's records further reflect that on June 4 and November 11, 2000, and April 23, 2001, the Plaintiff spoke by telephone with MBNA representatives concerning either insurance or balance transfer opportunities, and that on none of these occasions did the Plaintiff contest the Account in any way. Although in his briefs the Plaintiff disputes whether these conversations occurred, in his deposition, he testified that over a period of several years, he did have conversations with representatives of several credit cards companies but had no "recollection" that any of them related to the subject Account.

It is undisputed that on January 15, 2002, a $9,000 direct deposit was charged against the Account, and MBNA transferred funds in this amount to a checking account at BB&T that was jointly held in the name of Plaintiff and Ms. Schade, who was then still his wife. MBNA's records for the Account show that it verified Plaintiff's date of birth and address when conducting this transfer.

The same day, the balance from a Capital One credit card account held jointly in the name

of Plaintiff and Ms. Schade was also transferred to the Account, and the balance from a First USA credit card account held in Ms. Schade's name, with Plaintiff as an authorized user, was also transferred to the Account.

Although Ms. Schade now declares that she made these transfers without the Plaintiff's knowledge, he does not dispute that he regularly used the BB&T joint checking account where MBNA deposited the $9,000.00 discussed above, and that he received periodic bank statements for that joint checking account.

On April 3, 2002, an access check was drawn on the Account in the amount of $5,441.99, and MBNA deposited that sum into a Bank of America account held in Plaintiff's name (with Ms. Schade as an authorized user).

Although the Defendant began reporting the Account to the Plaintiff's credit file maintained by Experian, TransUnion and Equifax ("the Credit Agencies") in July 1995, in the light most favorable to the Plaintiff, he did not learn that the Account was listed on his credit report until sometime in March 2003 when he was attempting to obtain a home mortgage loan. At that time, the Account had a balance of $34,000. Ms. Schade declares that at about this time, she contacted MBNA and informed the company that she, rather than the Plaintiff, was the responsible party, and requested that Mr. Schade's name be removed from the Account.

On August 29, 2004, Plaintiff contacted MBNA by telephone to dispute the Account, and the same day disputed the Account to each of the Credit Agencies, which sent "identity" inquiries to MBNA, that is, requesting that MBNA investigate whether the Plaintiff and the "Walter Schade" listed in MBNA's account records were the same person.

Soon thereafter, MBNA consumer reporting specialists investigated Plaintiff's disputes by

reviewing the identifying information provided by the Credit Agencies, reviewing its records for the Account, consulting with third parties mentioned in those records, and comparing the name, address, date of birth, and social security number listed in its records with those provided by the Credit Agencies. After the investigation revealed that the Plaintiff was the same person identified in those records, as well as the other information discussed above, MBNA reported to the Credit Agencies that the Account, in fact, belonged to Mr. Schade.

On November 9, 2004, the Plaintiff, through his present counsel, filed his Complaint in the Superior Court of Union County, North Carolina, alleging a claim under FCRA that MBNA either wilfully or negligently made a false credit report, as well as state law claims for defamation, unfair and deceptive trade practices, unfair debt collection practices, a declaratory judgment that MBNA's records are incorrect, and an injunction requiring MBNA to cease reporting the Account to his credit report.

Concerning his claim, discussed below, that MBNA utilized improper methods in an attempt to collect the Account, on November 11, 2004, MBNA, which was still unaware that a lawsuit had been filed,[1] contacted the Plaintiff directly by telephone, but it is undisputed that the purpose of the call was solely to verify contact information for Plaintiff's attorney.

On December 29, 2004, the Defendant removed the state action to federal court, alleging federal question jurisdiction. Removal has not been challenged and appears proper.

On January 5, 2005, the Defendant filed its Answer, but has not filed a counterclaim to

---

[1] The Defendant was not served with a Summons and copy of the Complaint until November 29, 2004.

collect the current balance, if any, on the Account.[2]

On November 17, 2005, Plaintiff filed his Motion for Summary Judgment, contending without citing any authority in support that the fact that "the Defendant has failed to produce a signed credit card application identifying the Plaintiff as the cardholder of the Account" mandates summary judgment in his favor on all of his claims. See Plaintiff's "Brief in Support ..." at 2 (document #24).

The same day, the Defendant filed its Motion for Partial Summary Judgment, that is, as to each of the Plaintiff's claims except the portion of his FCRA claim grounded in negligence. See Defendant's "Memorandum ... in Support" at 3 (document #22) ("[a]lthough MBNA denies that it negligently violated the FCRA when investigating Plaintiff's disputes, it is not moving for summary judgment on the negligent component" of the FCRA claim).

In his briefs, the Plaintiff does not dispute that his state law claims for equitable relief are preempted by FCRA, and, further, expressly states that his FCRA willfulness claim, as well as his state law defamation and unfair and deceptive trade practices claims, are based on MBNA's alleged failure to conduct a reasonable investigation after it received inquiries from the Credit Agencies. See "Plaintiff's Brief in Opposition" at 13-15 (document #28).

The parties' cross-motions have been fully briefed as set forth above and are, therefore, ripe for disposition.

---

[2]Although the record does not expressly state whether the Account presently has an unpaid balance, as discussed below concerning the Plaintiff's claims for equitable relief, MBNA apparently continues to report some Account balance to the Credit Agencies.

## II. DISCUSSION

### A. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted when the pleadings, responses to discovery, and the record reveal that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Accord Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Once the movant has met its burden, the non-moving party must come forward with specific facts demonstrating a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). However, the party opposing summary judgment may not rest upon mere allegations or denials and, in any event, a "mere scintilla of evidence" is insufficient to overcome summary judgment. Id. at 249-50. Moreover, it is well settled that "affiants' statements [must be] made based on personal knowledge" and may not merely repeat the non-moving party's allegations. See Bryant v. Bell Atlantic Maryland, Inc., 288 F.3d 124, 135 (4th Cir. 2002) (considering disputed affidavits which were based on affiants' personal knowledge).

When considering summary judgment motions, courts must view the facts and the inferences therefrom in the light most favorable to the party opposing the motion. Id. at 255; Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990); Cole v. Cole, 633 F.2d 1083 (4th Cir. 1980). Indeed, summary judgment is only proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." Matsushita Elec. Indus.

Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotations omitted).

### B. Defendant's Motion for Partial Summary Judgment

#### 1. Claim for Willful Violation of Fair Credit Reporting Act

Section § 1681s-2(b)(1) of FCRA provides that:

> After receiving notice ... of a dispute with regard to the completeness or accuracy of any information provided ... to a consumer reporting agency, the person shall–(A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency ... (C) report the results of the investigation to the consumer reporting agency; (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly– (i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1).

If an entity covered by FCRA, which MBNA concedes that it is, fails to conduct a reasonable investigation or otherwise negligently fails to comply with § 1681s-2(b)(1), the aggrieved consumer may bring a private right of action to recover actual damages, costs and attorney's fees. Johnson v. MBNA Am. Bank, N.A., 357 F.3d 426, 431 (4th Cir. 2004) (where MBNA's investigation into consumer's dispute that she was not the obligor on the account did not include a search for and examination of the original account application, issue of negligence was for the jury); Akalwadi v. Risk Mgmt. Alternatives, Inc., 336 F. Supp. 2d 492, 510 (D. Md. 2004) ("[i]t is generally a question of fact for the jury as to whether a reasonable investigation was conducted"); and Bruce v. First U.S.A. Bank, Nat. Ass'n, 103 F.Supp.2d 1135, 1143 (E.D.Mo. 2000). Although federal regulations

8

require a credit card issuer to keep its credit card applications on file for only two years, 12 C.F.R. § 226.25, "Truth in Lending," Regulation Z, as discussed above, MBNA concedes that taking the facts in the light most favorable to the Plaintiff, summary judgment on his FCRA negligence claim would be improper at this point in the proceedings.

FCRA also permits a consumer to recover punitive damages if he can establish that the § 1681s-2(b) violation was willful. <u>See</u> <u>Bakker v. McKinnon</u>, 152 F.3d 1007, 1013 (8th Cir.1998); <u>Cushman v. Trans Union Corp.</u>, 115 F.3d 220, 226-27 (3rd Cir.1997); <u>Akalwadi</u>, 336 F. Supp. 2d at 510; <u>and</u> <u>Bruce</u>, 103 F.Supp.2d at 1143. However, in contrast to a negligence claim, to state a triable <u>willful</u> noncompliance claim under section 1681s-2(b), the Plaintiff must establish that MBNA "knowingly and intentionally did not investigate the disputed debt in conscious disregard of [his] rights." <u>Akalwadi</u>, 336 F. Supp. 2d at 510, <u>citing</u> <u>Bakker</u>, 152 F.3d at 1013, <u>Cushman</u>, 115 F.3d at 227 ("to justify an award of punitive damages, a defendant's actions must be on the same order as willful concealments or misrepresentations"), <u>and</u> <u>Bruce</u>, 103 F.Supp.2d at 1143.

Applying these legal principles to the facts in this case taken in the light most favorable to the Plaintiff, and assuming <u>arguendo</u> that a jury would conclude that MBNA failed to comply with § 1681s-2(b), he has failed to raise an issue of fact as to whether the violation was willful. Indeed, in response to the Credit Agencies' "identity inquiries," MBNA correctly determined that the Plaintiff and the "Walter Schade" named in their records were the same person.

Concerning MBNA's conclusion that the Plaintiff was the obligor on the Account, even if ultimately determined by the jury to be incorrect, that position was clearly supported by substantial documentation. At the time Plaintiff first disputed the Account in August 2004, MBNA's records indicated that the Account was opened in July 1995 and had been reported to the Credit Agencies

9

throughout that period;  that statements had been mailed to and payments received from the Plaintiff's addresses, including at least one check purportedly signed by the Plaintiff; that in 2000 and 2001, Plaintiff had three telephone conversations with MBNA employees in which he discussed other matters but never disputed the Account; and that in 2002, advances on the Account totaling nearly $15,000 had been deposited into bank accounts held in the Plaintiff's name.

In short, even taking the facts in his favor, the Plaintiff has failed to establish that the alleged violation was accompanied by the type of knowing and intentional concealment, misrepresentation or other malfeasance necessary to establish willfulness under § 1681s-2(b).  Accord  Bakker, 152 F.3d at 1013  (requiring "knowing and intentional" violation); Cushman, 115 F.3d at 227 ("to justify an award of punitive damages, a defendant's actions must be on the same order as willful concealments or misrepresentations"); Akalwadi, 336 F. Supp. 2d at 510; and Bruce, 103 F.Supp.2d at 1143.  Therefore, the Defendant's Motion for Partial Summary Judgment must be granted as to the Plaintiff's § 1681s-2(b) willfulness claim.

### 2. Defamation Claim

Section § 1681h(e) of FCRA provides that:

> [N]o consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency ... except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e) (emphasis added).  In short, unless the Plaintiff raises a material issue of fact as to whether MBNA acted with malice or willful intent to injure him, his defamation claim is preempted.  Accord  Thornton v. Equifax, Inc., 619 F.2d 700, 703 (8th Cir. 1980) (defamation claim

preempted by § 1681h(e) because plaintiff could not prove that credit agency provided false information "with malice or willful intent" to injure him); Anderson v. Trans Union, LLC, 345 F. Supp. 2d 963, 973 (W.D. Wis. 2004) ( § 1681h(e) expressly designed to "protect credit furnishers that try to comply with the Fair Credit Reporting Act"); Moore v. Equifax Info. Servs. LLC, 333 F. Supp. 2d 1360, 1367 (N.D. Ga. 2004) (furnisher granted summary judgment for lack of malice; "there is no evidence that [it] doubted the accuracy of the information it reported to Equifax"); Richardson v. Fleet Bank, 190 F. Supp. 2d 81, 90 (D. Mass. 2001) (state common law defamation claim preempted by section 1681h(e) because "plaintiffs fail[ed] to adduce any evidence showing that Equifax knew the plaintiffs' credit history it furnished was false or that it entertained actual doubt regarding the veracity of such information"); Whitesides v. Equifax Credit Info. Servs., Inc., 125 F. Supp. 2d 807, 811 (W.D. La. 2000) ("[i]t makes sense that acts required to be done by the FCRA are immunized from state tort liability"); Harper v. TRW, Inc., 881 F. Supp. 294, 298 (E.D. Mich. 1995) (reasoning that § 1681h(e) "operates to preempt common law causes of action predicated upon proper disclosures under the Act"); and Wiggins v. Equifax Servs., Inc., 848 F. Supp. 213, 226 (D.D.C. 1993) (observing that "malice" requires that the speaker either know information is false, or act with reckless disregard for its truth or falsity; and that "reckless disregard," in turn, requires evidence that the speaker entertained actual doubt about the truth of the statement).

Moreover, proving "malice" is a higher standard than establishing willfulness under § 1681-2(b). Accord Cushman, 115 F.3d at 227; and Pinner v. Schmidt, 805 F.2d 1258, 1263 (5th Cir.1986).

Applying these principles to this case, for the same reasons, discussed above, that the

Plaintiff failed to establish that MBNA willfully failed to investigate his dispute, he also has not raised an issue of material fact as to whether MBNA acted maliciously or with intent to injure him. Accordingly, his defamation claim is preempted under § 1681h(e), and the Defendant's Motion for Partial Summary Judgment will be granted as to that claim.

### 3. Unfair and Deceptive Trade Practices

In North Carolina, in order to prove an unfair and deceptive trade practice claim, plaintiffs must show that defendants engaged in "unfair or deceptive acts or practices in or affecting commerce." N.C.Gen.Stat. § 75-1.1.

Unlike claims for defamation, unfair and deceptive trade practice claims are not expressly preempted by § 1681h(e). However, there is authority to support MBNA's contention that the Plaintiff's unfair and deceptive trade practices claim is nevertheless also barred by § 1681h(e). Accord Spitzer v. Trans Union LLC, 140 F. Supp. 2d 562, 564 (E.D.N.C. 2000) (both defamation and unfair and deceptive trade practice claims barred by Section 1681h(e)), aff'd. unpubl. decision, 2001 U.S. App. LEXIS 1788 (4th Cir. 2001).

However, even if the peremptory effect of § 1681h(e) does not extend to unfair and deceptive trade practices claims, courts considering the issue have held that such claims are barred under the more general provisions of § 1681t(b)(1)(F), which provides that "no requirement or prohibition may be imposed under the laws of any State with respect to any subject matter regulated under ... section 1681s-2 ... relating to the responsibilities of persons who furnish information to consumer reporting agencies." Accord Ryder v. Wash. Mut. Bank, FA, 371 F. Supp. 2d 152, 154-55 (D. Conn. 2005) (holding Connecticut Unfair and Deceptive Trade Practices Act claim preempted under section

1681t(b)(1)(F)); and Jaramillo v. Experian Info. Solutions, Inc., 155 F. Supp. 2d 356, 362 (E.D. Pa. 2001).

Moreover, having failed to establish for purposes of his § 1681s-2(b) claim that the alleged violation was the result of anything more than negligence, the Plaintiff has also failed, even taking the evidence in his favor, to establish the egregious conduct necessary to maintain an unfair and deceptive trade practices claim. Erler v. Aon Risks Services, Inc. of The Carolinas, 141 N.C.App. 312, 320-21, 540 S.E.2d 65, 71 (2000) (to establish unfair and deceptive trade practice, plaintiff must prove "immoral, unethical, oppressive, unscrupulous [conduct]," mere mistake or negligence insufficient); and Helms v. Holland, 124 N.C.App. 629, 634, 478 S.E.2d 513, 516 (1996).

For these reasons, the Defendant will be granted Summary Judgment as to the Plaintiff's unfair and deceptive trade practices claim.

### 4. Unfair Debt Collection Practice Claim

To state a claim under the North Carolina Debt Collection Practices Act, N.C. Gen. Stat. § 75-51 et. seq. ("NCDCPA"), Plaintiff must show that MBNA has committed (1) an unfair act, (2) in or affecting commerce, (3) that has proximately caused him injury. Davis Lake Community Ass'n, Inc. v. Feldmann, 138 N.C. App. 292, 296, 530 S.E.2d 865, 868 (2000). For these purposes, an "unfair act" consist of threats, coercion, harassment, deceptive representations, or using other unconscionable methods to collect a debt. Id.

In support of his NCDCPA claim, the Plaintiff contends that MBNA committed an unfair act when it contacted him directly at a time after he had retained counsel. However, it is undisputed that MBNA contacted the Plaintiff on this occasion not in an attempt to collect the balance on the

Account, but only for the limited purpose of obtaining his counsel's contact information, hardly the threat, deception or other unfair act necessary to establish an NCDCPA claim. Similarly, even taking the evidence in the light most favorable to the Plaintiff, he has not shown that he was injured by this single communication, or any of the other communications that he admits that he had with MBNA. Accordingly, the Defendant's Motion for Partial Summary Judgment will be <u>granted</u> as to the Plaintiff's unfair debt collection practice claim.

### 5. Claims for Declaratory and Injunctive Relief

In his Complaint, the Plaintiff seeks a declaratory judgment stating that MBNA's records are inaccurate and an injunction requiring MBNA to remove the allegedly false information from his credit report. As MBNA points out in its Motion and briefs, however, although FCRA § 1681s-2(a) imposes an affirmative duty to furnish accurate information to credit reporting agencies, there is no private right of action for breach of that duty, other than the claim for damages pursuant to § 1681s-2(b) discussed above. <u>See, e.g.</u>, <u>Aklagi v. NationsCredit Fin. Servs. Corp.</u>, 196 F. Supp. 2d 1186, 1192 (D. Kan. 2002) (no private right of action under §1681s-2(a)); <u>and</u> <u>Hasvold v. First USA Bank, N.A.</u>, 194 F. Supp. 2d 1228, 1237 (D. Wyo. 2002) (same).

For this reason, and because the Plaintiff has essentially conceded the point by not addressing this issue in any of his briefs, the Defendant's Motion for Partial Summary Judgment will be <u>granted</u> as to the Plaintiff's claims for equitable relief. However, the undersigned notes that in the event the Plaintiff ultimately prevails upon his § 1681s-2(b) negligence claim, MBNA's then-continued refusal to remove the disputed Account from Plaintiff's credit report would undoubtedly be considered both "knowing and intentional" and, therefore, trigger potential liability for prospective

punitive damages.

### C. Plaintiff's Motion for Summary Judgment

For the same reasons, discussed above, that the Defendant's Motion for Partial Summary Judgment must be granted as to the Plaintiff's § 1681s-2(b) willfulness claim, and as to all of his state law claims, the Plaintiff's Motion for Summary Judgment as to those claims must be denied.

Concerning the Plaintiff's surviving claim for negligence under § 1681s-2(b), and taking the facts in the Defendant's favor, the question of whether MBNA's investigation in response to the Plaintiff's August 2004 complaints was reasonable is reserved for the jury. Accord Johnson, 357 F.3d at 431 (issue of whether MBNA's investigation into consumer's dispute was negligent was for the jury); and Akalwadi, 336 F. Supp. 2d at 510 ("[i]t is generally a question of fact for the jury as to whether a reasonable investigation was conducted").

Accordingly, the Plaintiff's Motion for Summary Judgment will be denied as to this final claim as well.

### III. ORDER

**NOW, THEREFORE, IT IS ORDERED:**

1. The "Plaintiff's Motion for Summary Judgment" (document #23) is **DENIED**.

2. The "Defendant's Motion for Partial Summary Judgment" (document #21) is **GRANTED**, that is, as to the Plaintiff's willfulness claim under 15 U.S.C. § 1681s-2(b) and his state law claims, the Complaint is **DISMISSED WITH PREJUDICE**.

3. Concerning the Plaintiff's remaining claim (for negligence under 15 U.S.C. § 1681s-2(b)), the Clerk is directed to place this case on the calendar for trial during the Court's May 1, 2006

Civil Jury Term.

4. Counsel for the parties are encouraged to explore settlement of the remaining claim in light of the Court's rulings herein, and to consider whether returning to the previously-ordered mediation might be advisable. Provided, however, counsel are advised that the Court intends to try this case during its May Term and therefore any efforts to settle their differences in the interim should be promptly commenced.

5. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED, ADJUDGED AND DECREED**.

Signed: January 26, 2006

_Carl Horn, III_

Carl Horn, III
United States Magistrate Judge